Good morning. May it please the Court, Faye Arf on behalf of Mr. Ortega, and the Court had asked us to be prepared to address the case of Roe v. Flores Ortega. Yes, and well we're delighted with the case and believe that the case is applicable to Mr. Ortega's case. There are... Well, why are you delighted? It looks like what the Supreme Court did there was reverse the Ninth Circuit, where we said if you don't consult with your client about an appeal, that's ineffective assistance, and the appeal is all done, and they said no, no, no. Counsel has a constitutionally imposed duty to consult with the defendant about an appeal, where there is reason to think that either a rational defendant would want to appeal, for example, because there are non-frivolous grounds for appeal, or two, that this particular defendant reasonably demonstrated to counsel that he was interested in appealing, and I'm not sure whether you've got that in the excerpts of record. Well, according to the Declaration of Counsel, well, number one... She says she didn't advise him, but she says that the reason why is that it would have been futile to request a rehearing or petition for review, and it appears that this Commissioner was sitting as a judge, so there was no automatic appeal. Well, I just said, well, two things I'd like the Court to consider. Number one, it was never clear to me. I did juvenile for about 10 years, and I can't understand the statutory difference. Nobody can. There's this California Court of Appeal decision saying it's not understandable. Yeah. I could never understand that. So that has to be clarified. So in our opinion, that would be a ground for remand, whether he is statutorily entitled to a rehearing. Well, regardless of whether he's entitled to a rehearing, even though it's called an extraordinary writ, it would appear that the opportunity to seek a writ is more like an appeal in other cases. Well, there are two remedies that we're alleging trial counsel overlooked. Number one was the right to a rehearing, because that's guaranteed by statute. But even if that's wrong, it looks like the writ, even though it's referred to as extraordinary, maybe isn't so extraordinary, it looks like an appeal where facts are looked at for clear error and the ultimate decision is looked at for abuse of discretion. So that's why Roe would apply, presumably, is that there's that opportunity. For the writ? Yeah. Okay. Yeah. Well, again, we see it as both. He had two chances, because even after the petition for a rehearing, if that was denied, then he could have still sought a writ. So what we're saying is, number one, he had the automatic right to a rehearing. There's no considerations. In other words, it's automatic. Are you sure he did? I thought when a commissioner or referee or whatever he is, I think he's both, was designated as a judge, that he didn't have an automatic right. Well, under the statute, if it's a referee, you automatically get the right for a rehearing. And I cited the code sections, the Welfare and Institution Code sections in my brief, and that's page 32 to 33. So it's automatic de novo by a judge. But isn't that only if he's sitting as a referee? Yes. It looks like he has three hats. Yeah, I can't, again, it's our position that he was sitting as a referee. There's really no evidence to show that he wasn't. So he had that right to a rehearing as a matter of right. That would have happened whether, no matter what counsel thought. I think, on this slide, I can't quite read it. I thought the excerpt said he was sitting as a judge and not a referee on this case. Well, they all sit as judges, okay, in juvenile court. Whoever's the presiding person sits as a judge. But referees can sit as judges, okay, they're the decision makers. But they still, juveniles still have a right to a hearing. Unless it's a judge judge, okay, where there's no hats. I mean, there's just one hat as a judge, then there's no right to a hearing. But in other areas, if it's not, if the person is not a judge, a superior court judge, under the laws of California, then there's a question as to whether the person is guaranteed a right to a hearing. Can I ask you a sort of more merits-based question under the Rose standard? What non-frivolous issue or issues would have been raised if you got to the point of seeking a writ? Okay, on the writ, the non-frivolous issue was there was a question of whether or not he qualified as a juvenile versus an adult. Well, in finding him not fit to remain as a juvenile, the court relied on two things. One was his level of criminal sophistication and also the gravity and nature of the offense, the two out of the five criteria. And only one is So what arguments would have been non-frivolous? Because that seems to be a requirement of Rose. Well, I believe that I addressed that in my brief. But number one, then there has to be some discretion by the court of appeal. Because otherwise, any juvenile involved in a murder would never qualify. Is that a crazy result? I mean, it's a drive-by shooting. He's the driver, the other guy's the shooter. I could see where there could be a non-frivolous gravity of the offense issue in all sorts of circumstances, perhaps a burglary in a warehouse, maybe even a burglary in a warehouse that turns into a violent confrontation and the guy is just the driver and didn't know it was going to. But a driver for a gang member who shoots out the window, how does that, how do you get around gravity of the offense on that? Well, number one, he wasn't the shooter. He was the driver. Well, yeah, he was the driver. Okay. And then number two, he was with an adult, an overbearing adult. We don't know if he was overbearing. There's no evidence in the record. All we know is that the judge wouldn't let you prove that your fellow was 17 and the other fellow was 21. But that's kind of like a pledge to a fraternity. In other words, overbearing, right? That's right. It's an older guy. I mean, one interpretation is your clients, I'm just a young fellow. I didn't know anything about this stuff. I had no idea this was going to go on. And the other interpretation is if you're trying to earn your stripes, you have to show that you're willing to go along with something that's rougher than the kind of things you might have done as a kid. It would be different if they were four years apart and they were four years old and eight years old. And it would be insignificant if it was four years apart and they were 63 years old and 67 years old. This is sort of in between. I would like to save some time for rebuttal. But I do believe that there were grounds, even with the gravity of the offense. I don't see how you get around that, but maybe you'll think of something. Well, actually, none of the victims were shot or physically injured. If he flunks one of the tests, is it per se that he doesn't get to stay in juvenile court or is it still a balancing thing? Yeah, he has to meet all five tests. Has to meet all five. And I'd like to save some time for rebuttal. Yes, please. You may sit down. Thank you. And we'll hear from the defense counsel here. Sanchez. Good morning and may it please the court, Deputy Attorney General Mary Sanchez, on behalf of Respondent. First, I'd like to just point out in the excerpts of record where it states that the commissioner, Jack Gold, is acting as a judge pro tem and that's ER 60, box 4 is checked and it says, it's hard to read, but it says stipulation for appointment of commissioner slash referee as judge pro tem is signed and filed. And that also corroborates the statement that was made at that hearing when the judge, the commissioner begins by saying, we have a signed stip. Give us that site again, would you please? That's ER 60 and that is box 4 of the minute order. All right. Now, on the other issue, though, that had there been a one would think, let me back track, that a person in this situation, a juvenile, would have wanted to challenge by writ or some other method the determination that he should be tried as an adult. But even under Roe, the lawyer doesn't have to do that if it would clearly be frivolous. So what would make the argument in this case frivolous? Why wouldn't it have been reasonable to assume that he sought a writ? Well, Your Honor, there were no non-frivolous grounds for bringing a writ as was discussed earlier. There was the argument brought up by your adversary that they missed. So nobody wound up dead or wounded. That's not much. But it's something. And I would think that a lawyer would do whatever he could to keep his client in juvenile court in this situation. I think under the facts here, it was a very weak argument. But aren't appeals taken all the time with weak arguments? Yes. Could a lawyer in a normal criminal case, could a lawyer say, I didn't devise my counsel of the right to appeal, but you know, it's OK because it wasn't a winning argument. It was kind of weak. The court wouldn't say, the court wouldn't accept that because weak arguments are brought all the time. And sometimes they win. Well, Strickland recognizes, however, that it's up to the reasoned evaluation of an attorney to weigh whether to bring an argument. I'm sorry. Well, the point is, you asked your question. I've got about, if I could, with your permission, I've got about six quick questions I'd like to ask her. And I'd like to have you just answer it without a debate and just give me a cite if you agree or disagree with it. Certainly. First, do you agree that a juvenile has a right to a lawyer in a juvenile proceeding? I agree. And Golt says that. Secondly, do you agree that the transfer from the juvenile court to the district court is a critical phase in the criminal appeal? I agree. Yes. And Kent B. Wells, Kent B. U.S. says that. Do you agree that the decision is whether to appeal, not the lawyer? I agree when we are discussing a direct appeal of a criminal conviction. Where I disagree is when we are at a fitness hearing and the decision is whether to apply for a petition for rehearing or a petition for extraordinary writ. Fine. It is not. No, go ahead. I'm sorry. It is not clearly established federal law as set forth by the United States Supreme Court that a juvenile under those situations, those circumstances, has a right to be the final arbiter of that decision. I understand that. Okay. Thank you. Next, do you agree that there is a presumed prejudice when the attorney does not discuss an appeal with the client and give the client the choice to make that decision? I disagree. And I believe Flores Ortega sets forth that there is no bright-line rule in a direct appeal situation. Therefore, you can Not a right. I'm not talking about the right to have an appeal. I'm talking about a client's right to have an appeal discussed with the client. I do not believe there is a bright-line rule in the situation of a juvenile. Okay. Okay. In a fitness hearing. And so your distinction, you say, yes, there is a right that a client has to be the appeal discussed, the possibility of this appeal, even a relatively frivolous one. But in a juvenile court, you don't think that that right exists. So a juvenile has a lesser constitutional right than an adult. Can I back up for just a moment? Isn't that a little bit odd? Don't we always say that juveniles usually have those rights? Go ahead, Nancy. You were going to say something. I want to just back up for a moment. The court in Flores Ortega rejected a bright-line rule that counsel must always consult with the defendant regarding an appeal. If it's frivolous. That is rejecting a bright-line rule. Okay. Let me ask you, because I don't want to hog the debate here, but do you agree that the possibility that a decision could be, that there is at least a possibility that this decision could have been reviewed by the that relief could have been obtained under habeas corpus, under California Code 5770? There's at least that possibility. You may not think it's a very good possibility, but at least you agree that there is that possibility. Let me understand. You're at least saying there's a possibility of a remedy for a petition for writ of habeas corpus. I believe the extraordinary writ that is contemplated by the statute is a petition for writ of mandamus. Okay. Yeah. So do you think that there is a possibility that relief could have been obtained under a writ of mandamus? I don't believe so under these circumstances. Not a possibility? Not a possibility. Not based on the juvenile court's finding of unfitness based on the gravity and seriousness of the offense. I have two questions. First, it has to do with the standard that would have been used had a writ been sought. It's my understanding under California law that in deciding whether to issue a writ in this circumstance that the court would review the juvenile court's ultimate determination of fitness under an abusive discretion standard and the factual findings for substantial evidence. And I'm looking at Juan T. v. Superior Court for that. Is that what the court thinking about a writ would be looking at? I believe you're correct, Your Honor. And my other question, though, that bears on sort of whether it's frivolous, I thought there was a declaration of some sort or a fitness evaluation of some sort in the record that was in the juvenile's favor as well as the essentially pre-sentence report that said that he should be treated as an adult. Was there not also contrary evidence? That is correct, Your Honor. There was a report from, I believe, a psychosocial historian, her name escapes me at the moment, where she found him fit under all five of the factors. You say she found him fit. That was the defense expert? That was the defense expert, correct. So she recommended that he be found fit? She recommended that he be found fit. And that was in the record? That was in the record. Did she have the power to make findings or was she just an expert giving opinions? She was the expert offering the evidence here. That was determined. I said finding or found, and I was confused. The judge took into consideration her recommendation and found it lacking. And in my brief, I cite where the juvenile judge is saying that it's his understanding, based on the evidence, that that gun would have been out and available for the driver, Mr. Ortega, to view long before the actual shooting. That I didn't get. The only part I didn't get was the word long. He said long before. He did. It doesn't take that long to pull a gun out from under the seat or under your jacket or whatever. He was certainly long enough for him to put his fingerprints on the barrel of the gun. So we know that he was aware that the gun was there. His fingerprints were found on the barrel. His? Who's his? Mr. Ortega's. His fingerprints were on the barrel of the gun. I think you can certainly infer from that that he passed the gun. The driver's fingerprints were on the gun. He was aware of it. Hmm? You're saying the driver's fingerprints. The driver. Before now. Our petitioner. Our petitioner. His fingerprints were on the barrel of the gun. And that certainly shows that he was aware that the gun was there. And I think that's very significant. Is there any evidence about whether the defendant, Mr. Ortega, was advised about that agreement that the case could be heard by a judge rather than the hearing examiner? You said that box was checked. Yes. Any evidence in the record about whether he was advised of his rights not to go with a full judge and the impact that might have had on his right to an appeal? I did not see anything like that in the record. Your Honors, if I may, finally, petitioner is seeking reversal of his adult conviction based on what occurred at the juvenile fitness hearing. As I have set forth in argument one, there was no trial court error, nor has petitioner shown error in the juvenile court. However, if this court disagrees, then the remedy is to remand the matter to the district court with instructions to grant the petition unless petitioner is afforded within 90 days the opportunity to file a delayed writ petition in the case. Unless the court has any further questions, I will submit. I don't believe that we do. Thank you. Thank you. Ms. Arfa, you have a few seconds remaining. Let me ask you before you make other points. Ms. Sanchez just ended by saying that if we agreed with your underlying position, the remedy would be the one that she just described. Do you disagree with her about the appropriate remedy? Well, the appropriate remedy would be ineffective assistance of counsel. That's a claim. That's not a remedy. Her statement is that we would have to send it back with an opportunity for you to have the writ proceeding that you didn't have from the juvenile findings, but not make a decision as to what the outcome of that would be. Why isn't that correct, even if we agree with your underlying claim? That the court couldn't make a decision that the court was wrong? Yes. Well, I think that the court could. I don't think there's anything prohibiting the court from saying why it couldn't have been granted. I think that would have been, that the court could say in making its finding that it should have been taken up on a writ, this court can say because of certain findings were never made and make those findings. Otherwise, the court would have to send it back and allow him the opportunity to file a writ. So, but again. So is that an agreement? I was a little confused by the dialogue there. Was it, do you agree with Judge Graber then that, that, not, she wasn't making a statement, but was your response to the question that the proper remedy, if a remedy were given, would be to remand for the right of an appeal? Not the right of appeal. The right to seek a writ. The right to seek a writ, yes. Of the fitness findings. Because that's the only way they're reviewed. Of course, that's all we're talking about. So you agree that that would be, if you were to prevail, you would agree that would be an appropriate remedy? Well, it would be appropriate. We would, of course, like more. Prison to everybody. That would be the appropriate remedy. Because this is the only way he could have his fitness findings reviewed, by extraordinary writ. There's no other way for him to do it. Okay. So, unless the court has any other questions. I've been thinking about the non-frivolous ground, bad marksmanship. And I've been thinking, I don't know if that makes it a less grave offense. I think grave was the statutory term. If the drive-by shooters don't know how to shoot a gun, and my impression is that that's probably true here in the videos I've seen. They don't know how to hold the thing. They don't square up. They just don't know how to shoot. It means a considerably increased risk to bystanders. Although it means a decreased risk to members of rival gangs or people they're trying to shoot at. And I would guess that in terms of gravity of the offense, most people would think the bystanders are probably the most important focus. Well, in an attempted murder, there has to be a specific intent to kill. Okay. So, there's a dispute about his intent. Because nobody. You shoot at people without meaning to kill them? Well, you can scare them. Was he shooting at people? And was there a person in sight? Or was he just shooting at a house? Apparently, we don't know exactly where the shots were going. But the probation report, the police report, showed one bullet became embedded in a tree trunk and another in the wall of the victim's residence. Well, I mean, that may respond to Judge Kleinfeld's position about their poor marksman. But was there any evidence about a clear object of a person that he was directing his anger at? As far as we can tell, from our perspective, there is not. There wasn't a direct shot at a particular person. Because in California law, with attempted murder, you could allege great bodily injury. Some people with attempted murder, there is actually a shot. So, was it at least on this record a plausible argument he could make that he was shooting to intimidate rather than to try to kill? It's plausible. It's plausible. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of both counsel. Thank you.
judges: Ebel, Kleinfeld, Graber